# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**PHAZZER ELECTRONICS, INC.,**

        **Plaintiff,**

**v.**                                                                    **Case No:   6:15-cv-348-Orl-31DAB**

**PROTECTIVE SOLUTIONS, INC.,**

        **Defendant.**

_____

## ORDER

This matter comes before the Court without a hearing on the motion to dismiss (Doc. 56) filed by Defendant, Protective Solutions, Inc., et al. ("Protective"); the response in opposition (Doc. 58) filed by Plaintiff, Phazzer Electronics, Inc. ("Phazzer"); Defendant's reply (Doc. 60); and Plaintiff's sur-reply (Doc. 63).   Defendant claims that this court lacks in personam jurisdiction over it, and seeks dismissal pursuant to FED. R. CIV. P. 12(b)(2).

## I. Background

Phazzer is a Delaware corporation with its principal place of business in Osceola County, Florida. (Doc. 53 at 1). Protective is a Michigan corporation with its principal place of business in Oakland County, Michigan. (*Id.*).   Phazzer sells and markets a variety of personal safety oriented equipment including stun guns, ammunition, holsters, etc. throughout the United States. (*Id.* at 2-3).   Phazzer was formed on July 8, 2009 and was granted a trademark for the Phazzer word and design in a variety of classes on July 26, 2011. (*Id.*).   Protective is a distributor that, at one time, sold Phazzer products pursuant to a distributor agreement. (*Id.* at 3). The original agreement between the two companies was eventually cancelled, but Protective continued using Phazzer marks in a variety of ways.   The instant dispute involves two claims of trademark infringement,

one count of trademark dilution, and one count of common law unfair competition.

Around August 30, 2013, Protective entered into the distributor agreement under which it was to "market, distribute, and sell the PHAZZER products in the Great Lakes region." (Doc. 53 at 3).   This agreement contained a choice of law provision indicating Florida or Nebraska law as the governing law. (Doc. 56 at 7).   Around February 23, 2014, Phazzer discovered that the www.phazzer-usa.com domain name redirected to Protective's website.[1]  (Doc. 53 at 4).   On or about June 25, 2014, Phazzer sent a letter to Protective ordering it to cease and desist using the www.phazzer-usa.com domain name. (*Id.* at 3).   On July 18, 2014, Phazzer again contacted Protective to inform it that the redirection of the website www.phazzer-usa.com to www.protective-solutions.com was unacceptable and needed to stop immediately. (*Id.* at 4). Finally, around July 25, 2014, Phazzer contacted Protective to cancel the distributor agreement. (*Id.*).

According to the allegations in the amended complaint, which are accepted as true for purposes of resolving this motion, Protective has continued to use the domain name www.phazzer-usa.com to sell and market stun gun and related products. (*Id.*).   Phazzer further alleges that the domain name is substantially similar to the registered "PHAZZER" trademark. As such, confusion is likely to ensue and the public is likely to be deceived into believing that Protective's products have their origin with Phazzer. (*Id.* at 5).   Further, Phazzer alleges that Protective's misuse of its trademark is a tortious act which caused harm in the state of Florida. (Doc. 58 at 1).

## II. Legal Standard

A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of

---

[1] Presumably, Phazzer had not authorized the use of that domain name in this manner.

jurisdiction. *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999); *see also Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (describing procedure for plaintiff to establish personal jurisdiction under Florida's long-arm statute). Where a defendant challenges jurisdiction by submitting affidavits in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Posner*, 178 F.3d at 1214; *see also Polski Linie Oceaniczne*, 795 F.2d at 972.

In order to exercise personal jurisdiction over the defendant, the Court must determine whether the exercise of jurisdiction is: (1) specific or general; (2) appropriate under the state's long-arm statute; and (3) comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868 (1984); *Stubbs v. Wyndham Nassau Resorts & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005); *see also Venetian Salami Co. v. Parthenais*, 554 So.2d 499, 502 (Fla. 1989).

Specific jurisdiction is based on a defendant's activities in the forum that are related to or arise out of the cause of action alleged in the complaint.  *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)).   General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated. *Stubbs*, 447 F.3d at 1360 n. 3 (citing *Meier*, 288 F.3d at 1269).   If the defendant is subject to the general jurisdiction of the court, it must respond in that court to any claim in the complaint. *Id.*

The exercise of specific jurisdiction comports with due process if the defendant has certain

"minimum contacts" with the forum. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation and citation omitted); *see also, e.g., Fraser v. Smith*, 594 F.3d 842, 845 (11th Cir. 2010). In assessing these contacts, a court must determine whether the defendant purposefully availed itself of the privilege of conducting activities in Florida—or purposefully established contacts in Florida—and whether there is a sufficient nexus between those contacts and the litigation. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010).   Further, in the case of tortious conduct, if the court determines that conduct is "intentionally and purposefully directed at a resident of the forum," the minimum contacts standard is met and a defendant can reasonably expect to be haled into court in the forum. *Licciardello v. Lovelady*, 544 F.3d 1280, 1287 (11th Cir. 2008) (quoting *New Lenox Industries v. Fenton*, 510 F.Supp. 2d 893, 904 (M.D. Fla.2007)).

Any exercise of jurisdiction, be it specific or general, must satisfy "traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (quotation and citation omitted). Accordingly, a court must determine whether the forum's interest in the dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend itself in an out-of-state court and the interests of the interstate judicial system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Licciardello*, 544 F.3d at 1284.

## III. Analysis

In the amended Complaint, Phazzer contends that Protective is subject to specific jurisdiction under one of the following two provisions of Florida's long-arm statute:

(1) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; or

…

(9) Entering into a contract that complies with s. 685.102

- 4 -

FLA. STAT. § 48.193(1)(a).   Moreover, in its response, Phazzer alleges that Protective's trademark infringement qualifies as a tortious act within the state for purposes of the long-arm statute. While Phazzer did not allege this section of the long-arm statute in the Complaint, it did allege a trademark violation, and an allegation of a trademark violation which caused injury in Florida has been held to satisfy Florida's long-arm statute. *See Licciardello*, 544 F.3d at 1283 (citing *Nida Corp. v. Nida*, 118 F.Supp 2d 1223, 1231 (M.D. Fla. 2000) (holding that the allegation of trademark infringement against a Florida resident is sufficient to satisfy Florida's long-arm statute).   Accordingly, this Court will examine the tortious conduct section of the long-arm statute as well.

### Long-Arm Statute

As Phazzer does not claim there is general jurisdiction, this Court will examine only the issue of specific jurisdiction.   Since long arm statutes are state law provisions, this Court must analyze the statute as would the Florida Supreme Court. *Oriental Imports & Exports, Inc. v. Maduro & Muriel's Bank, N.V.*, 701 F.2d 889, 890-91 (11th Cir. 1983). Further, in its analysis, a court must strictly construe the Florida long-arm statute. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (quoting *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)).   The aforementioned relevant provisions of the statute will be considered in turn.

First, Phazzer claims Protective's entry into the distributor agreement, which contained a choice of law provision, constitutes a waiver of an objection to personal jurisdiction.   But, Phazzer has not provided a copy of the agreement, and the choice of law portion of the agreement quoted in Protective's motion to dismiss, (Doc. 56 at 7)**,** does not establish specific jurisdiction under the long-arm statute, because the agreement specifies only the governing law for a claim

relating to breach of the agreement, not for a trademark infringement claim. (*Id.*).   Moreover, even if the choice of law provision did apply here, agreeing only to a particular forum is not the same as agreeing to personal jurisdiction in that forum.[2]   In order to be binding, Florida law requires that jurisdiction *and* forum be specifically mentioned in a contractual choice of law provision. *See* FLA. STAT. ANN. § 685.102(1) (West 2016) (stating that a person may submit to personal jurisdiction in a forum by contract if the contract conforms with § 685.101 *and* contains a provision by which a party "agrees to submit to the jurisdiction of the courts of this state") (emphasis added).   Since the choice of law provision is at best ambiguous as it relates to jurisdiction, personal jurisdiction is not established under FLA. STAT. § 48.193(1)(a)(9).

Next, Phazzer claims Protective is subject to specific jurisdiction under the long-arm statute because it conducted business in the state of Florida. (Doc. 53 at 2).   But, there are no facts in the pleadings that speak to this specific point.   Presumably, Phazzer would rely on the fact that Protective contracted for, and purchased, supplies from Phazzer in Florida to show that Protective was engaged in business in the state. (*Id.* at 3).   However, that transaction is not enough. *See Wallack v. Worldwide Mach. Sales, Inc.*, 278 F.Supp. 2d 1358, 1366 (M.D. Fla. 2003) ("The fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant."); *Washington Capital Co. v. Milandco, Ltd., Inc.*, 695 So.2d 838, 841 (Fla. 4th DCA 1997). Protective is a Michigan corporation with no offices in the state of Florida and they do not routinely engage in business in the state. None of the factors typically used to show that business is being carried on in Florida are present here.[3]   Collectively,

---

[2] *See deMco Technologies, Inc. v. C.S. Engineered Castings, Inc.*, 769 So.2d 1128, 1132 (Fla. 3rd DCA 2000) ("[A] choice of law provision, without more, is insufficient to establish long-arm jurisdiction over a nonresident defendant.").

[3] *See Horizon*, 421 F.3d at 1167 (holding that relevant factors for deciding whether a business is being carried on include the presence and operation of an office in Florida, possessing a license to

Protective's business activities in Florida are not sufficient to subject it to personal jurisdiction under FLA. STAT. § 48.193(1)(a)(1).

Finally, Phazzer contends that the trademark infringement was a tortious act outside the state that caused injury within the state.   In Florida, a trademark infringement claim does qualify as a tortious act.  *See Mighty Men of God, Inc. v. World Outreach Church of Murfreesboro Tennessee, Inc.*, 102 F.Supp. 3d 1264, 1271 (M.D. Fla. 2015) (citing *Licciardello*, 544 F.3d at 1283).   Further, this jurisdiction has broadly interpreted the long-arm statute with regard to tortious conduct to include conduct outside the state that causes injury within the state.  *See, e.g.*, *Licciardello*, 544 F.3d at 1283; *Horizon*, 421 F.3d at 1168 ("[J]urisdiction may be found in certain instances where an out-of-state defendant commits a tort that produces an injury in Florida."); *Posner*, 178 F.3d at 1209 (permitting personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida).   Moreover, as long as the website is accessible in Florida, it has been held that trademark infringement on the website occurs in Florida if the victim company is headquartered here. *See Licciardello*, 544 F.3d at 1283.

Here, Phazzer alleges that Protective misused its trademark by using the "PHAZZER" mark in a domain name that redirected to Protective's website.   Moreover, Phazzer claims the Protective website also contained the trademarked "PHAZZER" mark.[4] Either of these uses would be an infringement on Phazzer's trademark.   Due to the fact that the offending website was accessible in Florida, the infringement occurred here and Phazzer suffered injury here.[5]  *See*

---

do business in Florida, the number of Florida clients, and the percentage of revenue gleaned from Florida clients).

[4] Presumably, that website was accessible in the state of Florida. Phazzer does not specifically state that Protective's website was accessible in Florida.   However, in the modern Internet age, it is well understood that a published website is accessible anywhere in the world.

[5] Protective effectively concedes that there is a legal presumption that a company suffers injury at

*Mighty Men of God, Inc.*, 102 F.Supp. 3d at 1271 ("[B]y virtue of the website['s] accessibility in Florida, the infringement occurred in Florida) (internal citations and quotations omitted).   As such, Protective committed a tortious act within this state for purposes of the long-arm statute. Therefore, jurisdiction is proper under FLA. STAT. § 48.193(1)(a)(2).

### Minimum Contacts

The Eleventh Circuit has adopted a three-part test to determine whether a non-resident defendant possesses sufficient minimum contacts with a forum state so as to justify the exercise of personal jurisdiction.   The court must determine (1) whether the defendant purposefully availed itself of the forum state; (2) whether the cause of action arises out of the activities of which the defendant purposefully availed itself; and (3) whether the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. *Future Technology Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000). Further, in some circumstances, even a single act can meet the constitutional jurisdiction requirements. The Eleventh Circuit has held that intentional torts are such acts that "may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Licciardello*, 544 F.3d at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

Tort actions are different from contract actions and are subjected to a different constitutional analysis. *Licciardello*, 544 F.3d at 1286.   The *Calder* test is used to satisfy due process requirements in a tort case.   To satisfy that test, a tort must be (1) intentional; (2) aimed at the forum state; and (3) cause harm that the defendant should have anticipated would be suffered in the forum state. *Id.* (citing *Calder*, 465 U.S. at 474).

For this case, the *Calder* test, as applied by the Eleventh Circuit in *Licciardello*, is the

---

its principal place of business. (Doc. 60 at 6)

proper constitutional analysis.   Protective's use of Phazzer's marks and the redirection of the www.phazzer-usa.com domain name were not negligent acts, they were intentional. Since trademark infringement of this nature qualifies as intentional tortious conduct, the first element is clearly met.   *See Mighty Men of God, Inc.*, 102 F.Supp. 3d at 1271 ("[T]rademark infringement claims allege tortious acts.").

Next, Protective's actions were clearly aimed at the forum state.   Protective used Phazzer's marks and purposefully redirected the www.phazzer-usa.com domain name to its own website.   These actions convey a clear message: that Phazzer has endorsed Protective's products or that Protective's products are actually Phazzer's products.   Either one of these uses would amount to an unauthorized use of the Phazzer mark for commercial gain, meant to enhance the reputation of Protective.[6] Protective's actions were more than just the passive posting of a trademarked name or image; they were actions that implied an endorsement. *See Licciardello*, 544 F.3d at 1287 (holding that use of a trademarked name in a manner so as to imply an endorsement is enough to satisfy the *Calder* test).[7]

Finally, Protective's commercial gain from this implied endorsement would come at Phazzer's detriment because those buying what they believed to be a Phazzer product (though it is actually a Protective product) would not then buy the true Phazzer product. This injury would certainly be felt most acutely at Phazzer's principal place of business in Florida.[8]   This is

---

[6] Protective likely had the right to use these marks and the website name for the duration of the distributor agreement with Phazzer.   However, that right ended when the distributor agreement ended in July 2014.

[7] *See also Nida Corp.*, 118 F.Supp. 2d at 1230 (stating that something more than posting a trademark on a website, such as registering another company's trademark as a domain name for the purpose of extorting money, is necessary to satisfy the constitutional inquiry.)

[8] The legal presumption is that injury is suffered in the home state (as conceded by Protective).

especially true since the website was accessible in Florida.

In its reply, Protective cites *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997), as standing for the proposition that, to satisfy constitutional requirements, there must be contacts with the state beyond possible access of the website in a state.  However, this authority is not binding.  Moreover, the facts in the *Cybersell* case are distinguishable from the facts in the case at bar.  In *Cybersell*, the trademark infringement came from a website that was passive in nature. The court held that Cybersell FL merely using the service mark of Cybersell AZ on its website was not purposeful activity that would subject Cybersell FL to personal jurisdiction in Arizona. Here, due to the prior cancelled distributor agreement, Protective knew the "PHAZZER" marks were properly trademarked and that it was not authorized to use them.  Nonetheless, Protective purposefully continued to use the marks in a way that would deceive consumers into believing Protective's products were synonymous with Phazzer. Protective's misuse of the marks was more than mere passive posting of a service mark on a website.[9]

Further, Protective also cites a Southern District of Florida case that it claims is right on point.  *See JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F.Supp. 2d 1363 (S.D. Fla. 1999). However, this case is distinguishable as well.  First, in *JB Oxford*, there is no website that redirects to another so as to convey an endorsement of a product.  Once again, that case involved only using an infringing mark on websites that could be accessed in Florida. That is far more

---

(Doc. 60 at 6).

[9]  In fact, Protective's website is much closer to the interactive side of the *Zippo* spectrum (where personal jurisdiction is proper over a non-resident defendant) than to the passive side. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123-24 (W.D. Pa. 1997) (holding that interactive websites that do business over the Internet are likely to confer personal jurisdiction in out-of-state courts while purely passive websites containing information are not as likely to confer personal jurisdiction). While *Zippo* test is not binding in this jurisdiction, it is a factor this Court may take into account.

passive than the facts here in which a website domain name, comprised of a trademarked name, redirects to a competitor's website.   But, more importantly, Net Trade's websites were only directed at the seventeen states in which it was licensed to do business (of which Florida was not one).   Here, there is no evidence that Protective's website was limited to the Great Lakes area, as it claims.[10]  Protective's website could be used to buy its products in any state.

In sum, Protective purposefully misused a trademark in order to, presumably, imply Phazzer's endorsement of its products.   This was an intentional misuse, directed at Phazzer, which caused reasonably foreseeable harm at Phazzer's principal place of business in Florida.   As such, under Eleventh Circuit precedent, the *Calder* test is satisfied. Protective has minimum contacts with this forum and it could reasonably expect to be haled into court here.

### Fair Play & Substantial Justice

In addition to having minimum contacts with the forum, the exercise of jurisdiction over a non-resident defendant must comport with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).   In this analysis, a court looks to "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several states in furthering fundamental substantive social policies.'" *Id* at 477 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292).

On the whole, these factors weigh in favor of the Plaintiff.   The burden on Defendant of defending suit here, while not insignificant, is not so substantial as to be prohibitive.   Protective is

---

[10]  While the prior distributor agreement may have only been for the Great Lakes area, there is nothing to suggest that the website was not accessible anywhere in the world. Likewise, there is nothing to suggest that Protective's products couldn't be purchased anywhere in the world.

a company that sells products around the country, surely it can defend itself in a Florida court. Moreover, the forum state has an interest in ensuring that its residents are not harmed through the misuse of trademarks.   Finally, the interests of the judicial system are furthered by allowing Plaintiff to obtain relief, in the state where Plaintiff resides, for a trademark infringement that happened on the Internet. Forcing Plaintiff to go elsewhere would be unfair and inefficient.

**IV. Conclusion**

  For the foregoing reasons, it is

  **ORDERED** that the Defendant's Motion to Dismiss (Doc. 56) is **DENIED**.

  **DONE** and **ORDERED** in Chambers, Orlando, Florida on June 29, 2016.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Party